Charles DIEMER, Petitioner,

v.

Arne H. CARLSON, Governor, and Joan Anderson Growe, Secretary of State, Respondents.

No. C4–96–873.

Supreme Court of Minnesota.

June 28, 1996.

Charles Diemer, Inver Grove Heights, Pro Se.

Alan I. Gilbert, Office of the Attorney General, St. Paul, for Respondents.

## OPINION

KEITH, Chief Justice.

On petition of Charles Diemer filed pursuant to Minn.Stat. § 204B.44, we exercise our original jurisdiction to consider the recurring question of the authority of the governor to appoint a qualified person to fill a vacancy created by the retirement of a judge, in this case the Honorable Gerald W. Kalina. Petition denied.

Judge Gerald W. Kalina, having served as a judge of the Dakota County Court for the period from 1972 to 1983, was appointed as a district judge of the First Judicial District on April 25, 1983. He was thereafter elected to that position in the general election of 1984 and again in the 1990 general election. His current term will expire on January 6, 1997. By letter dated February 20, 1996, Judge Kalina submitted his resignation to Governor Arne H. Carlson, announcing his intention to retire from judicial office on August 31, 1996. On February 22, 1996, the governor issued an order directing the retirement on the date specified by Judge Kalina and filed the order on that same date in the Office of the Secretary of State, Joan Anderson Growe.[1] Minn.

---

1. In addition, the governor gave notice to this court of the retirement, Minn.Stat. § 2.722, subd. 4 (1996). In response, the court certified the vacancy to the governor. On March 4, 1996, the governor provided notice of the retirement and certification of the vacancy to the Commission on Judicial Selection. Minn.Stat. § 480B.01, subd. 9 (1996).

Stat. § 490.126, subd. 2. By notice of appointment also filed with the secretary of state on May 17, 1996, the governor appointed Rex D. Stacey as judge of the First Judicial District, effective September 3, 1996. The secretary of state has indicated that she does not intend to designate the office on the ballot in 1996.

The petitioner seeks an order of this court declaring that the appointment by the governor of a successor to Judge Kalina is invalid and directing the secretary of state to place the Kalina seat on the ballot in 1996. He contends that the action of the governor in appointing a successor to the Kalina seat is contrary to the clear constitutional mandate for the election to judicial office, relying upon *Page v. Carlson*, 488 N.W.2d 274 (Minn. 1992). He urges this court to adopt what he characterizes as a "bright line rule" to define and limit the circumstances in which the governor's power of appointment may be exercised. For the reasons which follow, we decline the invitation to engage in expansive and gratuitous judicial construction of unambiguous provisions of the Minnesota Constitution as implemented by the legislature.

Implicated in these proceedings are two provisions of the Minnesota Constitution:

> Sec. 7. *Term of office; election.* The term of office of all judges shall be six years and until their successors are qualified. They shall be elected by the voters from the area which they are to serve in the manner provided by law.
>
> Sec. 8. *Vacancy.* Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified.

The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.

Minn. Const. art. VI, §§ 7, 8.

We had occasion to comment about the nature of the appointment authority conferred upon the governor by the constitution[2] in *State ex rel. Hennepin County Bar Assoc. v. Amdahl*, 264 Minn. 350, 119 N.W.2d 169 (1962) as follows:

> [W]e hold that the controlling language of our constitution grants to the governor the power to fill vacancies by appointment and that the language "in the manner provided by law" is permissive in that it grants to the legislature authority, if it sees fit, to provide the manner in which the appointment shall be made.

264 Minn. at 353, 119 N.W.2d at 171.

Minn.Stat. § 490.126, subd. 2, relating to the manner in which vacancies are effected, represents the legislative implementation of article VI, section 8 and provides:

> Subd. 2. *Vacancies.* Any judge may make written application to the governor for retirement. The governor thereupon shall direct the judge's retirement by written order which, when filed in the office of the secretary of state, shall effect a vacancy in the office to be filled as provided by law.

Minn.Stat. § 490.126, subd. 2.

By its terms, section 490.126, subd. 2 requires the governor to whom an application for retirement is made to direct that retirement by written order. The filing of that order with the secretary of state is designated by statute as the operative act by which a vacancy in judicial office is effected.

---

2. At the time the *Amdahl* matter was considered, the legislature had not exercised its prerogative to implement the constitutional provision of then article VI, section 11, amended in 1956, addressing the question of vacancy in judicial office. In *Amdahl*, the incumbent, the Honorable Harold N. Rogers, judge of the district court, had filed for reelection in the 1962 primary election and had been nominated without opposition. One week before the general election on October 31, 1962, the incumbent judge died and the governor appointed Douglas K. Amdahl on November 2, 1962 to fill the vacancy. However, in the time between Judge Rogers' death and the election,

Donald Barbeau filed by petition for the office. Because he was the only candidate on the ballot, Barbeau was "elected" to the office. Neither Amdahl nor Barbeau challenged the authority of the governor to appoint Judge Amdahl for the period from Judge Rogers' death to the beginning of the new term, January 7, 1963—the proceeding in *quo warranto* was commenced for the sole purpose of ascertaining entitlement to hold the office after January 7, 1963. We held that the appointee was entitled to hold the office until the next general election more than one year after his appointment. The election of Barbeau was declared a nullity.

While the resignation may be effective at a specified future date, the "vacancy" is identified upon the filing of the governor's written order for retirement. In the matter at issue, the vacancy in the office, effective on August 31, 1996, was identified on February 22, 1996. Minn. Const. art. VI, § 8, in the event of a vacancy, does not merely authorize, but *mandates* the governor to appoint a qualified person to fill the vacancy until a successor is elected and qualified. The governor did so on May 17, 1996 and, as a result, a vacancy no longer exists. By operation of the same constitutional provision, the appointee is to serve until a successor is elected and qualified after a general election held more than one year after the appointment—the 1998 general election. This analysis comports with our opinion in *Nelson v. Quie,* 299 N.W.2d 119 (Minn.1980).[3]

To the extent petitioner contends that this court's decision in *Page v. Carlson,* 488 N.W.2d 274 (1992) requires a different result, the argument misses the mark: that decision addressed an entirely different issue, namely, the propriety of a gubernatorial order extending a justice's term of office pursuant to Minn.Stat. § 490.124, subd. 2 (1990). The court held that, under the circumstances

unique to the retirement eligibility of the incumbent justice, the executive order conflicted with the clear and unambiguous language of Minn. Const. art. VI, § 9 which authorizes the "extension of the term of any judge who becomes eligible for retirement within three years after expiration of the term for which he is selected." The question of whether a "vacancy" existed was not advanced by the parties or addressed by the court.

Moreover, to the extent the decision acknowledges our responsibility "to give effect to the clear, explicit, unambiguous and ordinary meaning of the language"[4] of a constitutional provision, its dictates are directly contrary to the petitioner's suggestion that we engage in judicial revision to establish the so-called "bright line rule."

Finally, while the *Page* decision restates the constitutional requirement that judges be elected by the voters,[5] article VI, section 7, the appointment process in the event of a vacancy neither frustrates nor eliminates that obligation—the appointed judge must still stand for election, albeit at a later time rather than immediately.[6] The appointment

---

3. Judge Herbert Wolner had been elected to a term which was to expire on January 6, 1981. However, because he reached his mandatory retirement age of 70 on October 21, 1980, Judge Wolner was required to retire on October 31, 1980, Minn.Stat. §§ 490.121, subd. 12 and 490.125 (1980). By letter of July 7, 1980, the judge submitted his written application for retirement to the governor. On July 18, 1980, the governor issued the written order directing Judge Wolner's retirement, effective on October 31, 1980, and filed it with the secretary of state. However, before the order was filed, 13 individuals filed as candidates for election to the office held by Judge Wolner. In a declaratory judgment action commenced in the district court, the court enjoined cancellation of the primary and general election, but, at the same time, refused to enjoin the gubernatorial appointment.

We held that the retirement of Judge Wolner created a "vacancy" within the meaning of Minn. Const. art. VI, § 8 as of October 31, 1980, that the appointment of a qualified person is the governor's constitutional duty and that the appointed person was to serve until a successor is elected and qualified after the 1982 general election. There was "no occasion to vote for candidates for this office at the general election to be held on November 4, 1980." *Nelson v. Quie,* 299 N.W.2d at 120.

The attorney general has issued two opinions of recent origin on this question which vary in their interpretation of the then existing constitutional and statutory provisions. Op.Att'y Gen. No. 184d (July 17, 1990); Op.Att'y Gen. 141d–2 (June 20, 1986). Although they are entitled to careful consideration, they are not binding on the court particularly where, as here, the issue presented was earlier decided in and is now governed by *Nelson v. Quie.* See *Village of Blaine v. Independent School Dist. No. 12,* 265 Minn. 9, 19, 121 N.W.2d 183, 191 (1963).

4. See *Rice v. Connolly,* 488 N.W.2d 241, 247 (Minn.1992) (citing *State ex rel. Gardner v. Holm,* 241 Minn. 125, 129, 62 N.W.2d 52, 55 (1954)). See also *State ex rel. Putnam v. Holm,* 172 Minn. 162, 215 N.W. 200 (1927).

5. *Page v. Carlson,* 488 N.W.2d at 278–79, citing *State ex rel. LaJesse v. Meisinger,* 258 Minn. 297, 299, 103 N.W.2d 864, 866 (1960) and *Enger v. Holm,* 213 Minn. 154, 157, 6 N.W.2d 101, 102 (1942).

6. In *State ex rel. Hennepin County Bar Assoc. v. Amdahl,* we noted with approval the 1956 amendments to the judiciary article, among which was the extension of the length of time

in the event of a vacancy serves the useful purpose of maintaining continuity in office and availability of judicial services which might otherwise be severely curtailed by the delay occasioned by the election and qualification of a successor. Were this court to engage in the expansive rather than literal reading of the provisions at issue, as petitioner proposes, the result would be that the judicial office presently held by Judge Kalina would become and remain vacant for the period from September 1, 1996 to January 7, 1997, the date on which successful candidates at the 1996 election take office. No such intention is expressed or implied in the constitution or statutes—on the contrary, it is precisely that potential which the provisions are designed to avoid.

Because we conclude that the governor was within his authority in appointing a successor to fill the vacancy which would occur on the retirement of Judge Kalina, we deny the petition for relief.[7]

Petition denied.

PAGE, Justice (dissenting).

Because we have long held that election constitutes the primary method of selecting judges in this state and the judicial office here can be filled by election in the regular course, I respectfully dissent. The governor's appointment, filling the judicial office currently occupied by Judge Kalina, subverts the election process in violation of article VI, section 7 of the Minnesota Constitution. I write also to voice my concern about the court's almost casual disregard of this institution's historical decision-making process.

Article VI, section 7 of the Minnesota Constitution provides:

The term of office of all judges shall be six years and until their successors are quali-

fied. They shall be elected by the voters from the area which they are to serve in the manner provided by law.

Our fundamental aim in construing the constitution is to ascertain and give effect to the intent of the people in adopting it. *Lyons v. Spaeth,* 220 Minn. 563, 567, 20 N.W.2d 481, 484 (1945). In adopting the constitution, the framers clearly intended that elections should constitute the primary method of selecting judges, and we have long held that to be the case. *E.g., State ex rel. LaJesse v. Meisinger,* 258 Minn. 297, 299, 103 N.W.2d 864, 866 (1960). *See generally Minnesota Constitutional Debates (Democratic)* 489–509 (1857); *Debates and Proceedings of the Constitutional Convention for the Territory of Minnesota (Republican)* 400–07 (1858). We have further concluded that constitutional provisions providing for gubernatorial appointment to fill a vacancy in a judicial office should be construed as subordinate to provisions providing for the election of judges in the regular course. *Page v. Carlson,* 488 N.W.2d 274, 279 (citing *Enger v. Holm,* 213 Minn. 154, 157, 6 N.W.2d 101, 102 (1942)). Therefore, when an election is scheduled in the regular course and a vacancy occurs after the election process has begun, there is no justification for undermining the election process by gubernatorial appointment.

Before a governor may fill a vacancy by appointment, there must first be a vacancy. *See* Minn. Const. art. VI, § 8 ("*Whenever there is a vacancy* in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified." (Emphasis added.)) In this case, while the court concludes that the vacancy in Judge Kalina's judicial office occurred on February 22, 1996, the vacancy will, in fact, not occur

---

between the appointment and the election of a successor. Minn. Const. art. VI, § 10 (1955) provided that the "successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened." Minn. Const. art. VI, § 11 (1956) provided for, and continues to require, the election "at the next general election occurring more than one year after such appointment." We stated as follows:

The complexity of modern society makes it imperative that ample opportunity be given the

people to evaluate the qualifications of candidates for judicial positions. Clearly, that is what the new judiciary article intended to accomplish.

264 Minn. at 357, 119 N.W.2d at 173.

7. The respondents have filed a motion to dismiss the petition with prejudice. There is no basis for a dismissal of the petition and we have addressed the merits of the arguments advanced.

until August 31, 1996. In determining that a vacancy has already occurred, the court relies on Minn.Stat. § 490.126, subd. 2 (1994), which provides that the filing of a written order directing the judge's retirement effects a "vacancy" in the office of judge. It is the exclusive province of the courts, however, not the legislature, to interpret the constitution. *State v. Hamm,* 423 N.W.2d 379, 380–81, 382 (Minn.1988) (refusing to allow constitution to be amended by statute and declaring statute permitting a six-person jury in misdemeanor cases unconstitutional where supreme court in 1869 interpreted the word "jury" in the Minnesota Constitution as meaning "a body of *twelve* persons") (subsequently overruled by constitutional amendment); *see also Women of the State of Minnesota v. Gomez,* 542 N.W.2d 17, 28 n. 11 (Minn.1995) (discussing constitutional limitations of the legislature and stating that the legislature's authority to enact statutes cannot be equated with the government's constitutional power). This court has consistently held that no vacancy occurs in the office of judge until a resigning judge's resignation becomes effective. *Nelson v. Quie,* 299 N.W.2d 119, 120 (Minn.1980) (concluding that " 'a vacancy in the office of judge' within the meaning of Minn. Const. art. VI, § 8" is created as of the date on which the retirement of a judge becomes effective);[1] *State ex rel. Dosland v. Holm,* 202 Minn. 500, 502, 505, 279 N.W. 218, 219, 220 (1938) (concluding that a vacancy does not occur until the position is open and the retirement becomes effective and noting that the constitutional provision that gives the governor the right to appoint successors to vacancies "does not confer the power to declare a vacancy").

Determining that a vacancy does not occur until the resignation takes effect also comports with both the plain meaning of the term "vacancy" and reality. *See State ex rel. Baxter v. Brown,* 22 Minn. 482, 484 (1876) (concluding that "the ordinary and popular meaning" of a word is "prima facie, the sense in which it must be taken to have been used in our state constitution, which, as it was made by the people, should be understood as

they understood it"). For example, Black's Law Dictionary states that "[t]he word 'vacancy,' when applied to official positions, means, in its ordinary and popular sense, that an office is unoccupied." *Black's Law Dictionary* 1548 (6th ed. 1990). Finally, reason and common sense dictate that there can be no vacancy in a judicial office where the office is occupied by a duly elected judge. Here, the office of judge will not be unoccupied until August 31, the effective date of Judge Kalina's resignation, regardless of when he gave the governor notice or when the governor filed the written order with the Secretary of State pursuant to Minn.Stat. § 490.126, subd. 2. Moreover, the result that the court reaches here regarding when the vacancy in the office occurs, raises serious doubts about Judge Kalina's continuing authority to act as a judge—what is the source of Judge Kalina's legal authority to continue acting as a judge after he has vacated his office?

Because all of our prior cases indicate that there was no vacancy in the office of judge when the governor purportedly appointed a replacement for Judge Kalina on May 17, the governor lacked authority at that time to make an appointment. *See* Minn. Const. art. VI, § 8. Further, by the time Judge Kalina's resignation becomes effective on August 31, 1996, and the office becomes vacant, the regularly scheduled election for the judicial office occupied by Judge Kalina will have commenced with the opening of the filing period for the office on July 2, 1996. Therefore, I believe that this office must be designated on the November 1996 ballot and that petitioner and other interested, qualified candidates should be allowed to file for election to the office.

A long line of cases interpreting article VI of the Minnesota Constitution supports this result. For example, in *State ex rel. Babcock v. Black,* 22 Minn. 336, 337 (1875), a judge, whose office would be filled by election in November 1875, resigned on October 5, 1875. The governor filled the vacancy by appointment on October 12 and, at the general elec-

---

1. Minnesota Statutes section 490.126, subd. 2, was in effect when the court decided *Nelson v. Quie,* but was not mentioned in the court's discussion of when a vacancy occurs. 290 N.W.2d at 120.

tion, a judge was also elected. The judge who had been appointed contended that the election should have been postponed for a year because the election took place within 30 days of the vacancy. *Id.* At the time, the constitution provided:

> In case the office of any judge shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor until a successor is elected and qualified. And such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened.

Minn. Const. of 1857, art. VI, § 10. In interpreting this provision, which is analogous to Minn. Const. art. VI, § 8 ("Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.") the court stated:

> [The section] was put in the constitution to provide for the exceptional case of a vacancy—for a case where the regular order of terms, and of elections for such terms, is broken upon by a vacancy before the end of a regular term for which the judge was elected, and by the necessity to elect before the election would come on under the general rule. The election mentioned by the section is not one which comes in the regular course of such elections, as provided for by § 7, but an election which becomes necessary by the happening of the vacancy; and in order that such an election, thus coming on at a time different from that at which a judge would, in the regular and natural course of things, be elected * * *.

22 Minn. at 338–39. Consequently, the court held that the election took place in the regular course and would have been held had there been no vacancy and, therefore, the election was properly held and the elected judge should take office. *Id.* at 339. If the court's reasoning and ultimate decision were right in *Black,* the judicial office here should be filled by election in the regular course.

A similar situation arose in the case of *Enger v. Holm,* 213 Minn. 154, 6 N.W.2d 101 (1942), where an associate justice of this court became a candidate for reelection at the election scheduled to be held on November 3, 1942, but died on September 13, 1942, and another associate justice resigned on October 6, 1942, three months before his term was to end. The governor filled both vacancies by appointment, even though a primary had taken place and the election had been scheduled. In determining who should hold the two supreme court seats as of the first Monday in January 1943, the court declined to arrest "the election machinery which has been set in motion" for the purpose of electing a successor in the regular course. *Id.* at 157, 6 N.W.2d at 102. The court noted that the "principal purpose" of the constitution is to provide a judiciary by the election of judges in the regular course and that provisions providing for appointment to fill vacancies are "applicable only where vacancies in the judicial office cannot be filled by, the election of judges in regular course." *Id.* at 157, 6 N.W.2d at 102. The court concluded that the judges elected in November 1942 were entitled to occupy the office as of the first Monday in January 1943,[2] and held that where a vacancy occurs during an election at which the office is to be filled in the regular course, the office is to be filled by election in the regular course. *Id.* at 159, 6 N.W.2d at 103. If the court's reasoning and ultimate decision were right in *Enger,* the judicial office here should be filled by election in the regular course.

In *State ex rel. Hennepin County Bar Ass'n v. Amdahl,* 264 Minn. 350, 119 N.W.2d 169 (1962), while remaining true to our prior decisions, the court reached a different result, deferring the election, where a general election was to occur, but the voters had insufficient time to consider the candidates and make an informed choice. In *Amdahl,* a district court judge died one week before the 1962 general election, after he had filed for

---

**2.** The individuals the governor appointed were permitted to and did fill the two supreme court seats on an interim basis until the first Monday in January 1943.

reelection in the 1962 primary and was nominated without opposition. *Id.* at 350, 119 N.W.2d at 170. Four days before the general election, the governor filled the vacancy by appointment and, later that same day, a candidate filed a petition to be elected to the vacant position at the general election. The candidate's name was placed on the ballot, and he was "elected." The court concluded that the appointed judge should remain in office until the next general election occurring more than one year after his appointment, reasoning that the voters had insufficient time to evaluate the qualifications of candidates. *Id.* at 364, 119 N.W.2d at 177–78. The court stated that in determining whether an election in the regular course should go forward, "The test ought to be whether there has been a fair opportunity for the voters to make an intelligent choice." *Id.* at 361, 119 N.W.2d at 176. This rationale is consistent with the court's holding in *State ex rel. Baxter v. Brown*, 22 Minn. 482 (1876). In *Brown* the court stated:

> While the general purpose of the constitution is to make judicial offices elective, this purpose is qualified by the provisions of § 10. As a part of the qualification the last sentence of the section is evidently inserted, in appreciation of the great importance of judicial offices, and of the consequent necessity that the electors, before being called upon to fill them, shall have such time for enquiry and consideration as will enable them to act with reasonable prudence and good sense in the premises. The evil sought to be provided against was, therefore, such as would result from an election occurring too soon after the happening of a vacancy, rather than such as would follow from deferring an election too long.

*Id.* at 484. If the court's reasoning and ultimate decision were right in *Amdahl*, the judicial office here should be filled by election in the regular course.

In every case interpreting article VI of the Minnesota Constitution decided by the court between the adoption of the constitution and the court's decision in *Nelson v. Quie*, 299 N.W.2d 119 (1980), the court's interpretation was consistent with the result that the governor by appointment should not be able to defeat the right of the people to elect judicial officers where an election in the regular course is reasonably available to determine a successor. In *Nelson*, the court made an inconsistent and unexplained departure from this long line of cases. In *Nelson*, a district court judge who would have been up for reelection in November of 1980 faced mandatory retirement effective October 31, 1980, just days before the general election. At the time the vacancy was created on October 31, the election process had already begun and a primary had been held to determine the judge's successor. Without any analysis, the court concluded that the governor had a constitutional duty to appoint a qualified person to fill the vacancy and that "there is no occasion to vote for candidates for this office at the general election to be held on November 4, 1980." *Id.* at 120.

With no acknowledgment, no analysis, and no explanation, the court overruled longstanding precedent. The court gave no reason for disregarding *Black* and *Enger*, where the court held that successors were to be determined by election in the regular course to fill vacancies that arose in October, before a scheduled November election in the regular course. The court also gave no reason for rejecting the *Amdahl* court's conclusion that an election in the regular course should be held to determine a successor when "there has been a fair opportunity for the voters to make an intelligent choice." [3] *Amdahl*, 264 Minn. at 361, 119 N.W.2d at 176. The court "substitutes power for principle and generates instability, unpredictability, politicization, and all the other dangers sought to be avoided by the doctrine of precedent" when it ignores prior decisions to reach a desired result without the justification of either "inaccurate factual premises or changed circumstances." *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828, 845 (Minn. 1991) (Coyne, J., dissenting) (quoting Geoffrey R. Stone, *Precedent, The Amendment*

---

**3.** Although the court in *Nelson* did not specify which language in *Amdahl* it was rejecting, it is clear from the district court opinion and the briefs submitted to the court that this was the phrase to which the court was referring.

*Process, and Evolution in Constitutional Doctrine,* 11 Harv.J.L. & Pub.Pol'y 67, 72–73 (1988)). In light of the court's reasoning and decisions reached in *Black, Enger,* and *Amdahl, Nelson v. Quie,* is simply wrongly decided and cavalierly disregards a long history of controlling authority.[4]

The court confidently proclaims that the constitutional sections at issue here are clear and unambiguous, while overlooking that its application of these sections clashes with the intent of the framers of the constitution. *See Amdahl,* 264 Minn. at 352, 119 N.W.2d at 170 ("A construction of our constitution must be given that will not defeat the obvious will of the people."). The *Amdahl* court more sensibly admitted that these sections are "not as clear as we would like to have it and that no matter what construction we place upon it some problems will be created." *Id.* at 360, 119 N.W.2d at 175. The court's failure to acknowledge this lack of clarity results in an interpretation that creates the potential for absurd results and flagrant abuses. For example, a judge whose seat is up for reelection in the regular course could give notice to the governor months in advance that she/he will resign on December 31. Under the court's reasoning, the "vacancy" will occur before filing for the seat opens and the governor is *mandated* to appoint a qualified person to fill the vacancy, thereby defeating the election process. Even more brazen, an incumbent judge who fails in his/her bid for reelection could resign the day after the lost election, which, according to the court's interpretation of the constitution, would force the governor to appoint a successor and nullify the election results. *See Amdahl,* 264 Minn. at 368, 119 N.W.2d at 180 (Gallagher, J., dissenting).

I would heed the guidance of the *Amdahl* court that we should resolve the ambiguities in the constitutional language by "giving effect to the language of the constitution when that can be done without destroying the purpose intended to be accomplished by its adoption." *Id.* at 361, 119 N.W.2d at 180; *see also Reed v. Bjornson,* 191 Minn. 254, 258–59, 253 N.W. 102, 104 (1934) (stating that any doubt as to the meaning of a constitutional provision "should be resolved, wherever reasonably possible to do so, in a way to forward the evident purpose with which the provision was adopted") (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 453, 54 S.Ct. 231, 245, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting)); *Taylor v. Taylor,* 10 Minn. 107 (Gil. 81) (1865) (concluding that courts should reject a literal interpretation of the constitution where the meaning of the words, understood literally, is not in accordance with the *"reason* and *spirit"* of the law). We have long held under the constitution that elections constitute the primary method of selecting judges and that the appointment provision applies only where the vacancy cannot be filled by election in the regular course. The framers of our constitution debated the merits of appointing judges versus electing judges and clearly expressed their preference for elected judges. If a change in the constitution is deemed desirable, it "should be changed by amending the Constitution itself, not by judicial interpretation." *State v. Buswell,* 460 N.W.2d 614, 622 (Minn.1990) (Yetka, J., dissenting), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1107, 113 L.Ed.2d 216 (1991).

**4.** While the constitution was amended after *Black* and *Enger* were decided, the amendment relevant here made no substantive change in the constitution other than to increase the length of time between an appointment to fill a vacancy and the election of a successor. This change was intended to eliminate the situation where a vacancy occurs between the primary and general elections in a year in which an election in the regular course is not scheduled. *Amdahl,* 264 Minn. at 358–59, 119 N.W.2d at 174 (citing *Flakne v. Erickson,* 213 Minn. 146, 6 N.W.2d 40 (1942)). The fundamental principle of an elected judiciary remains unchanged: "Vacancies in a judicial office are to be filled by appointment by the governor as under the present constitution."

*See* Maynard E. Pirsig, *The Proposed Amendment of the Judiciary Article of the Minnesota Constitution,* 40 Minn.L.Rev. 815, 839 (1956), *quoted in Amdahl,* 264 Minn. at 353, 119 N.W.2d at 171. Recommendations to adopt the "Missouri plan," a process where the governor selects a candidate based on a slate of names submitted by a nonpartisan judicial commission and subsequent elections are held to determine only whether or not the appointed judge should remain in office, were rejected. Pirsig, *supra,* at 838. Accordingly, the application of the appointment provision, as amended, remains the same—as previously construed, it does not apply where an election in the regular course is available. *See Black,* 22 Minn. at 338–39.

Having been elected to this court by the people of Minnesota, I have strong feelings about the citizens' right to participate directly in the selection of those who serve in the judicial branch of government. However, I am not insensitive to, and do understand, the very real concerns that judicial elections raise. While these concerns must be addressed, they do not justify the extraordinary step of subverting our constitution. The framers of our constitution intended that the primary method to be used for filling judicial offices is election by the people and that appointments should occur only in the "exceptional case." This case is not the exceptional case.

My dissent today should not be read simply as an expression of my personal view of how judicial offices should be filled. More important to me than my personal view on judicial election versus judicial appointment is the integrity of the decision-making process of the court which will be relied on long after the current members of the court are gone. As a court, we must zealously guard the process by which we make decisions and adhere to our prior decisions and their analytical framework unless they were clearly wrongly decided, are absurd or unjust, or unless circumstances or the underlying law has changed. None of these reasons for ignoring our prior decisions is present here. Every relevant decision by this court since *Black* in 1875, with the exception of *Nelson,* supports the conclusion that the framers of our constitution intended that, under circumstances similar to the one presented in this case, the judicial office is to be filled by election in the regular course. In this case, as in *Nelson,* the court, without acknowledgment, analysis, or explanation, again ignores our longstanding precedent.

Today, the court, by judicial fiat, erodes our judicial process and strikes "at the whole system of the people governing themselves, as much as it does at the propriety of an elective Judiciary," *Minnesota Constitutional Debates (Democratic)* 495 (1857), and in the process undermines our constitutional system to "defeat the obvious will of the people." *Amdahl,* 264 Minn. at 352, 119 N.W.2d at 170.

"[T]he people should be left free to choose the men [and women] in whom they are to place the issues of life and property." *Debates and Proceedings of the Constitutional Convention for the Territory of Minnesota (Republican)* 406 (1858).