**Todd P. ZETTLER, Petitioner,**

v.

**Jesse VENTURA, Governor of the State of Minnesota, and Mary Kiffmeyer, Minnesota Secretary of State, Respondents.**

No. C8–02–1048.

Supreme Court of Minnesota.

Aug. 30, 2002.

Todd P. Zettler, Savage, for petitioner.

Mike Hatch, Atty. Gen., Kenneth E. Raschke, Jr., Asst. Atty. Gen., and Alan I. Gilbert, Chief Deputy and Solicitor General, for respondent.

## OPINION

BLATZ, Chief Justice.

This is an original action under Minn. Stat. § 204B.44 (2000) in which the petitioner seeks relief from an alleged wrongful act by Secretary of State Mary Kiffmeyer, in her refusal to accept affidavits of candidacy for a judicial seat in the First Judicial District and her anticipated failure to place the seat on the ballot. Petitioner is an attorney residing in Scott County who had planned to run for the seat, which was scheduled for election in fall 2002. An expedited hearing was held and, so as not to impede the orderly administration of the election, we issued an order on July 3, 2002, granting the petition with this opinion to follow. In the order, we directed the secretary of state to accept affidavits of candidacy for the First Judicial District seat and to place the seat on the 2002 ballot.

Judge Eugene Atkins' judicial seat in the First Judicial District was subject to election in 2002 in the regular course. Thus, unless reelected, Judge Atkins' term of office would end on Monday, January 6, 2003. On June 20, 2002, Judge Atkins notified Governor Jesse Ventura that he intended to resign effective Thursday, January 2, 2003.[1] In response, on June 24, 2002, John Hultquist, the Governor's Judicial Appointments Coordinator, sent a letter to the secretary of state notifying her that the governor intended to appoint someone to replace Judge Atkins.

On June 27, 2002, petitioner filed the petition at issue herein under Minn.Stat. § 204B.44, asking this court to order the secretary of state to accept affidavits of candidacy and hold an election for Judge Atkins' seat. On July 1, 2002, the governor ordered and directed the retirement of Judge Atkins effective January 2, 2003, and directed that the order be filed with the secretary of state. The candidate filing period for judicial and other elected state offices ran from July 2, 2002 to July 16, 2002.

Petitioner, who intended to run for Judge Atkins' seat, alleges that because Judge Atkins intends to remain in office for essentially the full term of his office and notified the governor of this fact before the filing period opened, the seat should be filled by election rather than appointment. Section 204B.44, which authorizes the filing of a petition for correction of errors, omissions, or wrongful acts related to the electoral process, describes several specific errors and omissions that may be the subject of a petition, Minn.

---

1. On June 28, 2002, Judge Atkins clarified that his resignation was intended to signal his retirement.

Stat. § 204B.44(a), (b), (c) (2000), but also includes a broad category: "Any wrongful act, omission, or error of any election judge, municipal clerk, county auditor, canvassing board or any of its members, the secretary of state, or any other individual charged with any duty concerning an election." Minn.Stat. § 204B.44(d) (2000). Thus, we address the question of whether the secretary of state's initial[2] failure to accept affidavits of candidacy for and place on the ballot for election Judge Atkins' seat in the First Judicial District constituted a "wrongful act, omission, or error" of the secretary of state. Id.[3]

We begin our analysis with the Minnesota Constitution, and specifically Article VI, §§ 7–8, which provide:

> Sec. 7. **Term of office; election.** The term of office of all judges shall be six years and until their successors are qualified. They shall be elected by the voters from the area which they are to serve in the manner provided by law.
> Sec. 8. **Vacancy.** Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.

Thus, the constitution provides for both the election and appointment of judges.

Petitioner argues that when an election is feasible, a judicial appointment should give way to an election. We need not decide whether election or appointment is

the preferred vehicle for the seating of judges—the Minnesota Constitution determines which option is available under different circumstances. Specifically, the constitutional provision for the appointment of judges operates only when there is a vacancy. Minn. Const. art. VI, § 8. To determine whether there is a vacancy, we must be cognizant of the electoral process and how allowing that process to run its course would affect the operation of the judiciary in our state. In other words, there is a necessary interplay between the electoral process and the appointment authority, and we must give effect to each as appropriate.

Petitioner claims that if the election provision is to mean anything, Judge Atkins' seat must be filled by election this year. Petitioner notes that the timing of Judge Atkins' resignation allows sufficient time for the electoral process to run its course—notice to the governor was submitted before the opening of the filing period and over six months in advance of the effective date of Judge Atkins' retirement. Moreover, petitioner notes that Judge Atkins will serve out the full term of his office, suggesting there will be no actual vacancy.

This court addressed the election versus appointment issue in *Diemer v. Carlson,* 550 N.W.2d 875 (Minn.1996). In that case First Judicial District Judge Gerald Kalina's term was set to expire on January 6, 1997. On February 20, 1996, Judge Kalina submitted his resignation to Governor Arne Carlson, effective August 31, 1996. On February 22, 1996, the governor issued an order directing the retirement of Judge

---

**2.** Subsequent to this court's July 3, 2002 order, the secretary certified Judge Atkins' seat as subject to election in 2002.

**3.** Petitioner also named the governor in his petition and asked the court to enjoin the governor from appointing a successor to

Judge Atkins. In the court's July 3, 2002 order, the petition was dismissed with respect to the governor because the petition did not allege that the governor in the context at issue was charged with a "duty concerning an election." Minn.Stat. § 204B.44(d).

Kalina and filed the order with the secretary of state. *See* Minn.Stat. § 490.126, subd. 2 (2000) (providing that a written order for retirement, when filed with the secretary of state, effects a vacancy in the office to be filled). On May 17, 1996, the governor noticed the appointment of Rex Stacey effective September 3, 1996. The secretary of state then notified the court that she did not intend to designate the office on the ballot in 1996.

Charles Diemer, a lawyer living in the First Judicial District, petitioned this court under section 204B.44 to declare that the appointment of a successor to Judge Kalina was invalid and to direct the secretary of state to place the Kalina seat on the ballot in 1996. *Diemer*, 550 N.W.2d at 876. In denying Diemer's petition, this court referenced section 490.126, subdivision 2, which provides that a vacancy is effected when the order for retirement is filed with the secretary of state, and explained that once the vacancy is created, Article VI, Section 8 of the constitution "does not merely authorize, but *mandates* the governor to appoint a qualified person to fill the vacancy * * *." 550 N.W.2d at 877. Thus, we concluded, the governor was within his authority in appointing a successor to fill the vacancy occurring on the retirement of Judge Kalina.

In the opinion, we also noted:

The appointment in the event of a vacancy serves the useful purpose of maintaining continuity in office and availability of judicial services which might otherwise be severely curtailed by the delay occasioned by the election and qualification of a successor. Were this court to * * * [do] as petitioner proposes, the result would be that the judicial office presently held by Judge Kalina would become and remain vacant for the period from September 1, 1996 to January 7, 1997, the date on which successful candidates at the 1996 election take office. No such intention is expressed or implied in the constitution or statutes—on the contrary, it is precisely that potential which the provisions are designed to avoid.

550 N.W.2d at 877–78.

Therefore, there were two bases for the result in *Diemer*. First, under Minn.Stat. § 490.126, subd. 2, a vacancy exists when the governor orders a retirement, and under the constitution the governor must fill vacancies by appointment. Second, the constitutional provision authorizing an appointment serves the important purpose of avoiding a gap in service, so as not to leave a judicial seat open awaiting the taking of office the following January.

This court also addressed a similar situation in *Nelson v. Quie*, 299 N.W.2d 119 (Minn.1980). In that case, Hennepin County Municipal Court Judge Herbert Wolner's retirement was to become effective October 31, 1980. On October 6, 1980, this court issued an order stating:

It is the unanimous opinion and judgment of this court that the retirement of Judge Wolner creates a "vacancy in the office of judge" within the meaning of Minn. Const. Art. VI, § 8 as of October 31, 1980; that the appointment of a qualified person to fill the vacancy has become the constitutional duty of the Governor; and that the person so appointed will serve until a successor is elected and qualified following the general election in 1982.

It follows that there is no occasion to vote for candidates for this office at the general election to be held on November 4, 1980.

*Nelson*, 299 N.W.2d at 120. In *Nelson* we did not reference section 490.126, subd. 2, nor is it apparent from the order when the governor received notice of Judge Wol-

ner's retirement or filed the order for retirement with the secretary of state.

■ The situation presented by Judge Atkins' retirement is both different from these situations and unprecedented. Shortly before the start of the filing period, Judge Atkins announced his intention to retire and, while the governor's order for retirement issued before the start of the election process, there has been no announcement of a successor. Moreover, Judge Atkins will serve in office through Thursday, January 2, 2003. The end of Judge Atkins' full term is Monday, January 6, 2003. Thus, the gap in judicial service that would have resulted if Judge Atkins' successor were chosen by election is minimal, and occurs long after the election. Under these particular facts, an election to fill this position is entirely feasible and use of the appointment process would serve no logical purpose. As such, an appointment would interfere with Article VI, Section 7 of the Minnesota Constitution.

On the other hand, in *Diemer* there was no direct conflict with an impending election. Judge Kalina announced his retirement in February and the governor so ordered it within two days, well before filings opened for the seat. *Diemer*, 550 N.W.2d at 875. Governor Carlson announced a successor on May 17, 1996, also well before the election process began. *Id.* at 876. Finally, the effective date of Judge Kalina's retirement was August 31, 1996, which would have left a gap in service of approximately four months if the seat had been filled by election rather than appointment. *Id.* at 876, 878. Thus, in *Diemer* the use of the appointment process did not directly conflict with the electoral process and served the important purpose of preventing a gap in service.

■ In *Diemer* we recognized the importance of a gap in service to the appoint-

ment function. The potential for a delay in providing judicial services to the citizens of this state is an important consideration in whether the state constitution's appointment or election provision should apply. The simple truth is that even when all funded positions are filled, many of our judicial districts operate under significant resource limitations. Major case filings, which demand the vast majority of judges' time, have increased significantly over the last decade. In rural areas, one judge may be the only judge for several counties. It is for this important reason that we have previously stated that it is "simply unthinkable" that we could tolerate a significant gap in service awaiting the results of an election. *State ex rel. Hennepin County Bar Ass'n v. Amdahl*, 264 Minn. 350, 352, 119 N.W.2d 169, 170 (1962). Thus, where there would be a significant gap in service, use of the appointment process under Article VI, Section 8 of the Minnesota Constitution is appropriate. We need not establish a bright line for the effective date of a retirement that creates an unacceptable void in service. However, as the effective date in this case, January 2, 2003, leaves a clearly insignificant gap, the use of the appointment process is not required.

The dissent in effect claims that a gap in service simply cannot be considered when determining whether use of the appointment or elective process is appropriate. The dissent thereby allows the appointment process in Article VI, § 8 to trump the electoral process in Article VI, § 7. However, a preference for the appointment process is neither necessary nor legally dictated for several reasons. As noted above, neither election nor appointment of judges is preferred over the other— under the constitution each process has its place under different circumstances. Instead there must be interplay between the

two processes to ensure that one process does not annul the constitutional provision for the other. The dissent would allow the electoral process to be usurped by appointment through blind reliance on section 490.126, subd. 2, a statutory provision that ignores the necessary interplay between the constitutionally-rooted election and appointment processes.

A vacancy is significant, as the dissent asserts, but not in the formalistic and perhaps superficial sense of automatically triggering the appointment process. Instead we consider not only whether there is a vacancy under the statute but also whether there is a vacancy in the real sense of a potential for a gap in service that could leave citizens of the state without necessary judicial services. That is why the potential for a gap in service was an important part of our analysis in *Diemer* in determining whether an appointment was proper, rather than a single criterion such as the existence of a vacancy under section 490.126, subd. 2. *See Diemer*, 550 N.W.2d at 877–78. In *Diemer*, the notice of the appointment was made before filings opened for the position and a significant gap in service would have occurred if no appointment had been made. *Id.* Thus, where no notice of appointment had been made before filings opened and there would be no gap in service, allowing an election is consistent with our analysis in *Diemer*. In sum, the dissent does not explain why or how the Minnesota Constitution requires an appointment in this case despite the mandate of Article VI, Section 7 and the mandate of common sense for an election under these particular facts.

■ Accordingly, we conclude that where, as here, the effective date of the judge's retirement would thwart an otherwise possible election that would leave no significant gap in service, use of the election process in Article VI, Section 7 of the Minnesota Constitution is required. Therefore, as previously ordered, the secretary of state was required to accept affidavits of candidacy for the seat and place the seat on the ballot to avoid a "wrongful act, omission, or error" in the duties concerning an election. Minn.Stat. § 204B.44(d).

Petition granted.

MEYER, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

### DISSENT

ANDERSON, Russell A., Justice (dissenting).

The court's task in this case should have been an easy one, as rarely has the court been presented with language so explicit and so pervasive, in the Minnesota Constitution, the applicable statute, and our previous case law. That language expressly provides that a vacancy is effected when the governor files an order for a judge's retirement with the secretary of state, and that the governor must then appoint a successor. Despite the clarity of this rule of law, the court injects needless uncertainty into both the election and appointment process by requiring a determination of whether a gap in service is "significant" enough to warrant an appointment, where and when the "potential for delay" becomes important and whether an election is "feasible." For this reason, and because I believe that respect for precedent requires use of the appointment process in this instance, I respectfully dissent.

The court's analysis properly begins with the Minnesota Constitution, but then ignores the explicit language in article VI, section 8 regarding a vacancy.

Sec. 8 **Vacancy.** Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.

Following the constitutional directive to provide "by law" the appointment procedure, the legislature did just that in Minn. Stat. § 490.126, subd. 2:

Any judge may make written application to the governor for retirement. The governor thereupon shall direct the judge's retirement by *written order which, when filed in the office of the secretary of state, shall effect a vacancy in the office to be filled as provided by law.*

(Emphasis added.)

In *Diemer v. Carlson*, 550 N.W.2d 875 (Minn.1996), this court relied squarely on what we referred to as the "unambiguous provisions of the Minnesota Constitution as implemented by the legislature"[1] and ruled: "The filing of that order with the secretary of state is designated by statute as the operative act by which a vacancy in judicial office is effected," and once the vacancy exists, even if the resignation may be effective at a specified future date, the governor is mandated to appoint a qualified person to fill the vacancy. 550 N.W.2d at 876–77. In this case, the governor's order for retirement was filed on July 1, 2002, which effected a vacancy. Thus, Article VI, section 8 expressly requires an appointment.

We held in *Diemer* that a vacancy was effected when the order for retirement was filed with the secretary of state *regardless of the effective date of the resignation.* 550 N.W.2d at 876. The court today not only finds the effective date of the resignation significant, but seemingly dispositive of the question whether an appointment is appropriate. We considered the possibility of a gap in service in *Diemer,* but only to address the petitioner's argument that the outcome was controlled by *Page v. Carlson,* 488 N.W.2d 274 (Minn. 1992), in which the court restated the constitutional requirement that judges be elected. *Diemer,* 550 N.W.2d at 877–78. A gap in judicial service was not a part of the analysis of whether a vacancy existed, and was clearly at most a secondary consideration—a "useful purpose" as we put it in *Diemer.*

Now, only six years later, to reach its conclusion, the court completely ignores our ruling in *Diemer* as to both the dispositive issue of when a vacancy occurs, and the force of the analysis in *Diemer.* While the doctrine of stare decisis is not inflexible, it is not to be abandoned on a whim; its purpose is to provide stability in the law, and we are "extremely reluctant" to overrule our previous cases. *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn. 2000). Yet *Diemer* is effectively overruled

---

1. The majority casts this dissent as exalting the statute over the constitution. However, as noted above, the constitution explicitly provides that the appointment is accomplished "in the manner provided by law," thereby deferring to the legislature the establishment of when the vacancy occurs. Minn. Const. art. VI, § 8. This analysis does not "blindly" rely on the statute, as the majority suggests, but gives full effect to both the constitutional and legislative directives. In addition, given its constitutional underpinnings, there is nothing "formalistic" or "superficial" about section 490.126, subd. 2, nor does the statute, as the majority claims, ignore the necessary interplay between the election and appointment provisions. The statute simply provides clarity to when a vacancy occurs so that the governor can exercise the appointing authority.

by the court's decision,[2] because no longer is it clear when a "vacancy" occurs in a judicial seat, and no longer is it clear when use of the appointment process is appropriate.

The court's analysis is that whenever a vacancy arises and an election is "feasible," without leaving a "significant" gap in service, an election should be held. The secretary of state regularly administers special elections for unanticipated vacancies in state offices. *See* Minn.Stat. § 204D.19 (2000). Thus, an election is almost always "feasible." While the court purports to express no preference for an election over appointment as the proper method for filling judicial vacancies, the court does exactly that by holding that if an election is feasible, one should be held regardless of whether a vacancy exists as provided by law.

And what is a "significant" gap in service? Significance may depend on characteristics unique to the district affected, such as number of judges, workload, and geographic area. Determining whether a gap in service is significant will require a qualitative analysis that defies any bright line or predictability. The court by its decision invites a case by case analysis for every judicial retirement, and consequently seriatim petitions for relief under Minn. Stat. § 204B.44, decided on a scant record and an expedited basis. In this case the court adopts a new rule of law and leaves uncertain when use of the appointment process is proper.[3] The constitution and section 490.126, subd. 2 clearly define when a vacancy occurs and filling the vacancy by appointment; the court's opinion injects an evanescence in the process that is inappropriate and unnecessary.

*Diemer* established the rule of law to be applied here. Government by the rule of law:

> is the main bulwark to our democratic form of government, demands a decent respect for the rule of stare decisis in order that citizens will be assured that decisions of the court are good for more than "one trip and one day only."

*State ex rel. Foster v. Naftalin*, 246 Minn. 181, 205, 74 N.W.2d 249, 264 (1956). Because the court's ruling eviscerates the rule of law from *Diemer* for no apparent reason, I respectfully dissent.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson.

---

**2.** While language in a dissent cannot expand or limit the scope of a majority holding, it is nonetheless troubling that the dissent in *Diemer* raised a factual scenario almost identical to that presented in this case, 550 N.W.2d at 882 (Page, J., dissenting) and the majority in *Diemer* therefore was not unaware of the implications of its holding, a holding directly contrary to that reached by the majority in this case.

**3.** The court's ruling usurps the legislative determination in section 490.126, subd. 2, of when a vacancy occurs by injecting into that determination considerations of whether an election is feasible, and whether there will be a significant gap in service. While most matters of judicial administration are properly within this court's jurisdiction to decide, the election of judges and the appointment process for new judges is properly left to the co-equal branches of government to administer. Minn. Const. art. VI § 8.