Jill CLARK, an individual and candidate for Minnesota Supreme Court Chief Justice, Heather Robins, an individual and a registered voter, and Gregory Wersal, a candidate for Minnesota Supreme Court Chief Justice, Petitioners,

v.

Mark RITCHIE, in his official capacity as Secretary of State of the State of Minnesota, and Governor Timothy Pawlenty, Respondents.

No. A10–501.

Supreme Court of Minnesota.

May 13, 2010.

Jill Clark, Jill Clark, P.A., Golden Valley, MN, for petitioners.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for respondents.

OPINION

PAGE, Justice.

This matter comes before the court on a petition filed by petitioners Jill Clark, Heather Robins, and Gregory Wersal pursuant to Minn.Stat. § 204B.44 (2008), seeking an order directing the Minnesota Secretary of State to accept filings for the office of Chief Justice of the Minnesota Supreme Court for the November 2010 general election. Petitioners contend that the Secretary of State is obligated under Article VI, Sections 7 and 8, of the Minnesota Constitution to place the chief justice seat on the November 2010 ballot and that the failure to post the chief justice seat for election violates petitioners' rights under the First Amendment of the United States Constitution. We hold that the Minnesota Constitution does not require that the chief justice seat appear on the November 2010 ballot and that the failure to post the chief justice seat for election in November 2010 does not violate petitioners' rights under the First Amendment. We therefore deny the petition.

In the fall of 2005, Chief Justice Kathleen A. Blatz announced her resignation from the Minnesota Supreme Court, effective January 10, 2006. On December 15, 2005, respondent Governor Timothy Pawlenty announced the appointment of Associate Justice Russell A. Anderson as Chief Justice and the appointment of Hennepin County District Court Judge Lorie Skjerven Gildea to fill the vacancy created by Justice Anderson's appointment as Chief Justice. Chief Justice Anderson and Associate Justice Gildea were sworn in on January 10 and 11, 2006, respectively.

On March 10, 2008, Chief Justice Anderson announced his retirement from the Minnesota Supreme Court, effective June 1, 2008. On March 17, 2008, the Governor announced the appointment of Eric J. Magnuson to fill the vacancy created by the retirement of Chief Justice Anderson. Chief Justice Magnuson was sworn in on June 2, 2008.

Chief Justice Magnuson announced his resignation, effective June 30, 2010, in a March 11, 2010, letter to Governor Pawlenty. On March 12, 2010, the Governor gave notice to the Secretary of State of a vacancy in the office of chief justice effective June 30, 2010. On March 31, the Governor formally notified the Secretary of State that he intended to fill the vacancy in the office of chief justice by appointment.

On March 16, 2010, petitioners filed a petition in this court under Minn.Stat. § 204B.44 to require respondent Minnesota Secretary of State Mark Ritchie to accept candidate filings for the chief justice seat and to place the chief justice seat on the ballot for the November 2010 election. Petitioners later filed a motion "for determination as to which court will create the factual record."

The parties' submissions present several issues for our determination, some procedural, some substantive. Procedurally, respondents seek the dismissal of Governor Pawlenty from this case and argue that this matter cannot be maintained as a petition for a writ of mandamus. Related to the mandamus issue is petitioners' motion for an evidentiary hearing, either before a referee appointed to find facts for this court or before a district court as a mandamus proceeding, see Minn.Stat. § 586.12 (2008). On the merits, petitioners contend that Article VI, Sections 7 and 8, of the Minnesota Constitution require that the Secretary of State post the chief justice seat for election on the November 2010 general election ballot. Petitioners also contend that the Secretary of State's refusal to accept filings for the chief justice seat violates petitioners' rights under the First Amendment to the United States

Constitution to run for, and to vote for, the office of chief justice.

## I.

█ Governor Pawlenty seeks dismissal from this case. We conclude, based on the claims made and the relief sought in the petition, that the Governor is neither a necessary nor proper party, and we therefore dismiss the petition as to him.

We dismissed the Governor as a party-respondent from *Clark v. Pawlenty* (*Clark I*), noting that the only actions of the Governor alleged in the petition in that case were appointments to fill judicial vacancies. 755 N.W.2d 293, 299 (Minn.2008). We noted that the petition in *Clark I* did not seek to bar the Governor from filling judicial vacancies in the future and that the Governor could not implement any of the relief that petitioners sought in that case because the Governor is not responsible for preparation of the ballot. *Id.*

█ The petition filed in this case states that petitioners "seek to prevent Governor Pawlenty from appointing anyone to the chief justice seat in 2010." However, the relief requested in the petition is directed only to the Secretary of State, specifically, that the Secretary of State be required to post the chief justice seat for filing and place the seat on the ballot in 2010. As we noted in *Clark I*, Minn.Stat. § 204B.44 "provides a remedial process only for correction of the ballot and directly related election procedures." 755 N.W.2d at 299.

Therefore, section 204B.44 [2] does not provide a basis for relief barring the Governor from filling judicial vacancies. *See Clark I*, 755 N.W.2d at 299. Because the petition here seeks no relief directed toward the Governor, and because the Governor cannot implement any of the relief that the petition does seek, we dismiss the petition as to Governor Pawlenty.

## II.

We next consider petitioners' contention that Article VI, Sections 7 and 8, of the Minnesota Constitution mandate that the chief justice seat be placed on the November 2010 ballot, despite the existence of a vacancy created by the resignation of Chief Justice Magnuson. The timing of an election for a judicial office after an appointment to fill a vacancy in that office is addressed in Section 8 of Article VI. Section 8 provides:

> Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.

Petitioners argue that the second sentence of Section 8 does not apply to the circumstances at issue here, when a previous vacancy in the office was filled by appointment and a new vacancy occurs in the

---

**2.** This petition is brought under section 204B.44. But petitioners titled their petition as a "Petition for Writ of Mandamus" and in their motion for an evidentiary proceeding suggest using the trial procedures found in the mandamus statutes. Respondents are correct that this action cannot properly be maintained as a mandamus proceeding in this court. *See* Minn.Stat. § 586.11 (2008); Minn. R. Civ.App. P. 120.01 (petition for writ of mandamus may be filed in supreme court

only if directed to the court of appeals, the tax court, or the workers' compensation court of appeals); *see also Winters v. Kiffmeyer*, 650 N.W.2d 167, 168 & n. 1 (Minn.2002) (noting that this court had previously dismissed Winters' claim when initially brought as a petition for writ of mandamus in the supreme court, because the relief was sought against the secretary of state and original mandamus jurisdiction was therefore in the district court).

same judicial office before an election is held for a successor to the first appointee.[3]

■■ The rules applicable to the construction of statutes are equally applicable to the constitution. *State ex rel. Mathews v. Houndersheldt,* 151 Minn. 167, 170, 186 N.W. 234, 236 (1922). In examining constitutional provisions, we "give effect to the clear, explicit, unambiguous and ordinary meaning of the language." *Rice v. Connolly,* 488 N.W.2d 241, 247 (Minn. 1992). Unambiguous provisions need no interpretation. *State ex rel. Putnam v. Holm,* 172 Minn. 162, 166, 215 N.W. 200, 202 (1927).

In the circumstances presented by this case, the plain language of Section 8 does not provide for an election for chief justice in 2010. Chief Justice Magnuson has announced his resignation from the office. The first sentence of Section 8 requires the Governor to appoint someone to fill the vacancy created by Chief Justice Magnuson's resignation, until a successor is elected. The second sentence of Section 8 provides that a successor shall be elected at the next general election occurring more than one year after the appointment. Assuming that the Governor complies with the constitutional mandate that he appoint someone to fill the vacancy created by Chief Justice Magnuson's resignation, the next general election occurring more than one year after the appointment will be in November 2012.

Petitioners contend that such an application of Section 8 would be improper. First, petitioners argue that Article VI, Section 7, establishes a constitutional preference for the election of judges that requires us to interpret Section 8 to provide for initial selection of judges by election,

rather than appointment, whenever possible. Second, they argue that we should construe the word "vacancy" in Section 8 to apply only to vacancies created by certain events. Third, petitioners argue that in this case the successor to be elected at the next general election is not a successor to Chief Justice Magnuson, but to Chief Justice Blatz, election of whom is long overdue, according to petitioners. Finally, they argue that the election for chief justice must be held in November 2010, because whenever a resignation is announced early enough that it is feasible to hold an election, an election is required. We address these arguments in turn.

### A.

Petitioners argue that the provision in Article VI, Section 7, for election of judges creates a constitutional preference for the election of judges in all circumstances. Article VI, Section 7, of the Minnesota Constitution provides: "The term of office of all judges shall be six years and until their successors are qualified. They shall be elected by the voters from the area which they are to serve in the manner provided by law." Petitioners argue the Governor's power to appoint judges must be strictly construed, because of this asserted constitutional preference for the election of judges.

■■ Petitioners' argument is grounded on the premise that the Minnesota Constitution creates a preference for the initial selection of judges by election, rather than by appointment. But we have expressly rejected the argument that the constitution establishes such a preference: "[N]either election nor appointment of judges is

---

**3.** We note that only once before in the history of the Minnesota Supreme Court have there been three consecutive appointments to a specific judicial seat without either of the first two appointees standing for election to the office. *See* "Minnesota Supreme Court Table of Succession," http://www.lawlibrary.state.mn.us/judges/SuccessionTable.pdf.

preferred over the other—under the constitution each process has its place under different circumstances." *Zettler v. Ventura*, 649 N.W.2d 846, 850 (Minn.2002); *see also Diemer v. Carlson*, 550 N.W.2d 875, 877 (Minn.1996) ("[W]hile the *Page* decision restates the constitutional requirement that judges be elected by the voters, article VI, section 7, the appointment process in the event of a vacancy neither frustrates nor eliminates that obligation— the appointed judge must still stand for election, albeit at a later time rather than immediately." (footnotes omitted) (citing *Page v. Carlson*, 488 N.W.2d 274, 278–79 (Minn.1992))). Our task, therefore, is to determine which process—election or appointment—is called for by the constitution under the circumstances presented here.

### B.

■ The appointment and election timing provisions of Section 8 are triggered by a vacancy in the office of judge. Petitioners' second argument is that the term "vacancy" in Section 8 was intended by the drafters to have a limited meaning. In particular, petitioners dispute that the term "vacancy" in Section 8 includes intentional retirements and resignations that are effective before the end of the judge's term of office. Instead, petitioners argue, the term "vacancy" in Section 8, and therefore the Governor's authority to fill vacancies by appointment, is limited to vacancies created by "unexpected events," such as death, disability, and involuntary removal from office.

■ There is, however, no language in Section 8 limiting the meaning of "vacancy." Rather, the first sentence of Section 8 provides for gubernatorial appointment "[w]henever there is a vacancy." (Emphasis added.) "Whenever" plainly connotes any time there is a vacancy. Nothing in Section 8 suggests that the Governor's obligation to appoint applies to only certain types of vacancies. Nor is there anything in the common understanding of the term "vacancy" that limits its meaning to those caused by unexpected events. When a statute (or, in this case, a constitutional provision) is couched in broad and comprehensive language, the court cannot add exceptions to it. *State v. Tennyson*, 212 Minn. 158, 161–62, 2 N.W.2d 833, 835 (1942).

Because the plain language of the constitution does not support a restrictive definition of vacancy, but instead expressly requires an appointment "whenever" there is a vacancy, we decline to adopt petitioners' narrow interpretation. Under the plain and unambiguous language of Article VI, Section 8, the Governor's appointment authority applies to all vacancies in judicial office, without limitation based on the reason for the vacancy.

■ Furthermore, even if this conclusion were not compelled by the plain language of Section 8, there are additional reasons that undermine the viability of petitioners' restrictive definition of vacancy. Limiting the meaning of vacancy to "involuntary" or "unplanned" vacancies would adversely affect the reasonable application of other constitutional provisions in which the word "vacancy" is also used.[4] For example, there could be no special election to replace a state legislator who voluntarily resigned from office, because Minn. Const. art. IV, § 4,[5] which author-

---

**4.** Constitutional provisions, like statutory provisions, are to be interpreted in light of each other to avoid conflicting interpretations. *Clark I*, 755 N.W.2d at 305 (citing *Am. Family*

*Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000)).

**5.** Article IV, Section 4, provides:

izes the governor to call a special election, would apply only if the vacancy were "involuntary." The petitioners' narrow interpretation of vacancy would also mean that offices such as secretary of state, state auditor, and attorney general would have to remain vacant in the event of a "voluntary" resignation until after the next general election—a period that could be as long as two years—because Minn. Const. art. V, § 3,[6] would not authorize the governor to appoint a successor, even temporarily, because there would be no "vacancy." Indeed, petitioners' interpretation could leave the state without a governor because Minn. Const. art. V, § 5,[7] would not authorize the lieutenant governor to act as governor in the event of the governor's voluntary departure from office, because no "vacancy" would be created.

Another flaw in petitioners' argument is that their narrow definition of vacancy would necessarily require an inquiry into the reasons for an official leaving office, in order to determine whether the departure was sufficiently "involuntary" to constitute a "vacancy." Section 8 makes no provision for such an inquiry. Indeed, at oral argument, petitioners could not identify who would conduct such an inquiry or any standard that could reasonably be applied.

Accordingly, we conclude that petitioners' argument that the term "vacancy" in Article VI, Section 8, is limited to unexpected and unintentional departures from

office is not only contrary to the plain language of Section 8, but is an unreasonable and unworkable interpretation. Under the plain and unambiguous language of Article VI, Section 8, the Governor is obligated to fill by appointment all judicial vacancies, created by any cause. And because we conclude that Section 8 applies to all vacancies, we further conclude that the reason for a judge's retirement or resignation from the bench is not relevant under Article VI, Section 8.

### C.

█ Petitioners argue that after a judicial vacancy is filled by appointment, a successor must be elected at the next general election more than one year after that appointment, even if the person appointed leaves office before the election, creating a consecutive vacancy that is to be filled by appointment under Section 8. Petitioners contend that an election to fill the office must take place at the next general election more than one year after the *first* appointment, because Section 8 requires the selection of a "successor" at the next general election, and "successor" means a successor to the judge whose departure created the initial vacancy.

Therefore, petitioners assert, the Minnesota Constitution required an election for chief justice in 2008, the first general election that occurred more than one year after the appointment of Chief Justice

---

Representatives shall be chosen for a term of two years, except to fill a vacancy. Senators shall be chosen for a term of four years, except to fill a vacancy.... The governor shall call elections to fill vacancies in either house of the legislature.

**6.** Article V, Section 3, provides, in pertinent part:

[The governor] shall fill any vacancy that may occur in the offices of secretary of state, auditor, attorney general and the other state and district offices hereafter creat-

ed by law until the end of the term for which the person who had vacated the office was elected or the first Monday in January following the next general election, whichever is sooner, and until a successor is chosen and qualified.

**7.** Article V, Section 5, provides, in pertinent part: "In case a vacancy occurs from any cause whatever in the office of governor, the lieutenant governor shall be governor during such vacancy."

Anderson to fill the vacancy created by the resignation of Chief Justice Blatz. Because no election for chief justice was held in 2008, petitioners contend that the successor to Chief Justice Blatz has yet to be elected and the chief justice seat must therefore be on the November 2010 ballot.

Petitioners' focus on the meaning of "successor" is misplaced, because the timing of the successor's election depends on the meaning of "appointment" in Section 8. Section 8 requires that when a judicial vacancy has been filled by appointment, there must be an election for a successor "at the next general election occurring more than one year *after the appointment.*" (Emphasis added.) In the rare circumstance of an appointment to fill a consecutive vacancy, the question is: to which "appointment" the election timing requirement applies. Petitioners' "successor" argument necessarily would mean that the "appointment" from which the period for election is measured is the appointment to fill the initial vacancy and not the appointment to fill any subsequent vacancy.

This construction is contrary to the language and structure of Section 8. The second sentence of Section 8 provides: "The successor shall be elected for a six year term at the next general election occurring more than one year after *the appointment.*" (Emphasis added.) Use of the definite article "the" to modify "appointment" indicates that the drafters were referring to a specific appointment; here, the specific appointment is referenced in the first sentence of the section. *See Rose v. SAIF Corp.*, 200 Or.App. 654, 116 P.3d 913, 918 (2005) (use of definite article makes clear that statutory reference to item is reference to same item that is mentioned earlier in the same statute); *see also Bachovchin v. Stingley*, 504 N.W.2d 288, 290 (Minn.App.1993). The

first sentence in Section 8 states: "Whenever there is a vacancy in the office of judge the governor shall *appoint* ... a qualified person to fill the vacancy until a successor is elected and qualified." (Emphasis added.) Therefore, when a person is appointed to fill a vacancy under the first sentence of Section 8, the second sentence of Section 8 provides that a successor is to be elected at the next general election occurring more than one year after *that* appointment. *See Clark I,* 755 N.W.2d at 305 (explaining that under Article VI, Section 8, "an appointed judge will serve at least one year before the seat to which he or she was appointed appears on the ballot").

Petitioners' argument regarding the meaning of "successor" is also based on a misreading of *Clark I.* Petitioners contend that in *Clark I* we interpreted the term "successor" in Section 8 as referring to the " 'successor' to the judge whose departure created the vacancy in the first place, not to the judge appointed to fill the vacancy." 755 N.W.2d at 304. In the current context of consecutive vacancies, petitioners extrapolate the phrase "the judge whose departure created the vacancy in the first place" to mean "the judge whose departure created the first vacancy." There is no support in *Clark I* for such an extrapolation.

In *Clark I,* which did not involve consecutive vacancies and appointments, we used the language relied on by petitioners here only to illustrate that the term "successor" in Section 8 could have several meanings and was therefore ambiguous. *Clark I,* 755 N.W.2d at 304. We stated that "[i]t seems equally plausible ... that the phrase 'until a successor is elected and qualified' means the 'successor' to the judge whose departure created the vacancy in the first place, not to the judge appointed to fill the vacancy." *Id.* But we

did not adopt this formulation as the meaning of "successor." Rather, we only rejected the definition of "successor" argued by the petitioners in *Clark I:* someone different than the person appointed to fill the vacancy. *Id.* at 305–06.

Moreover, because *Clark I* did not involve consecutive vacancies, the phrase "created the vacancy in the first place" was not a reference to the first of multiple vacancies, as petitioners now argue. It was simply a reference to the judge who created the vacancy by leaving office, in contrast to the person appointed to fill that vacancy.

### D.

▇ Petitioners further argue that our decision in *Zettler v. Ventura,* 649 N.W.2d 846 (Minn.2002), requires an election, rather than an appointment, whenever an election to fill a vacancy is feasible. Petitioners read *Zettler* too broadly.

In *Zettler,* a judge notified the Governor that he intended to retire effective Thursday, January 2, 2003, just four days before the judge's term of office would otherwise have ended. 649 N.W.2d at 847. Noting that "the constitutional provision for the appointment of judges operates only when there is a vacancy," *id.* at 848, we considered "whether there [was] a vacancy in the real sense of a potential for a gap in

service that could leave citizens of the state without necessary judicial services," *id.* at 851. We made clear in *Zettler* that the constitution requires an election instead of appointment to replace a retiring or resigning judge only when "the gap in judicial service that would have resulted if [the retiring judge's] successor were chosen by election is minimal, and occurs long after the election." *Id.* at 850. It is only in such circumstances of a minimal gap in service that "an election to fill this position is entirely feasible and use of the appointment process would serve no logical purpose." [8] *Id. Zettler* plainly states that "where there would be a significant gap in service, use of the appointment process under Article VI, Section 8 of the Minnesota Constitution is appropriate." *Id.*

The circumstances here are quite different than those in *Zettler.* Here, Chief Justice Magnuson's resignation is effective June 30, 2010. Without an appointment to fill the vacancy, the state and the judicial branch would be left without a chief justice for more than six months—a significant gap in service by any definition. Accordingly, this case does not present a circumstance in which "an election to fill this position is entirely feasible and use of the appointment process would serve no logical purpose." [9] *Id.*

---

8. In other words, we concluded in *Zettler* that an appointment was not available under Section 8 because there was no vacancy "in the real sense of a potential for a gap in service." 649 N.W.2d at 851. Because we found no real vacancy, *Zettler* is fully consistent with our interpretation of the term "vacancy," see section B, *supra.*

9. Petitioners contend they should be given an opportunity to discover why Chief Justice Magnuson's resignation was not made effective even sooner, before the filing period for elective office opens on May 18, 2010. However, an earlier effective date would have only lengthened the period of vacancy in the office

of chief justice and would not have negated the need for an appointment to fill it. We therefore conclude that the reasons for the timing of Chief Justice Magnuson's resignation are not relevant to our decision here. And because we concluded in section B, *supra,* that the reasons for a resignation or retirement are not determinative of whether a vacancy is created for purposes of Section 8, the reasons for Chief Justice Magnuson's resignation itself are similarly not relevant to our decision. Accordingly, we deny petitioners' motion seeking discovery and an evidentiary hearing or trial.

The office of chief justice will be vacant as of June 30, 2010, and under the plain language of Article VI, Section 8, the Governor is constitutionally obligated to fill that vacancy by appointment. The person appointed as chief justice fills the vacancy created by the resignation of Chief Justice Magnuson, and Section 8 provides for election of a successor at the next general election more than one year after his or her appointment, that is, in November 2012. In these circumstances, the Secretary of State is not authorized under state law to post the chief justice seat for the November 2010 general election.

### III.

 Finally, we consider petitioners' claim that the failure to place the chief justice seat on the November 2010 ballot violates petitioners' rights to run and to vote for chief justice, rights they assert arise under the First Amendment to the United States Constitution. Because we have concluded that the Minnesota Constitution does not permit an election for chief justice in November 2010, the question is whether the First Amendment independently provides petitioners with a right to run or to vote for chief justice at a time when state law does not provide for an election. It is not clear that petitioners are making that argument. It is clear that if they are, there is no merit to it. Petitioners cite no case, and we can find none, holding that the First Amendment creates a right to run or to vote for state office if state law does not provide for an election to be held.

 The First Amendment does not compel the election of judges. Indeed, in a case relied upon by petitioners, the United States Supreme Court acknowledged that states are not required to elect their judges, noting " 'the greater power to dispense with elections altogether.' " *See Republican Party of Minn. v. White*, 536

U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (quoting *Renne v. Geary*, 501 U.S. 312, 349, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (Marshall, J., dissenting)); *see also id.* at 794, 122 S.Ct. 2528 (Kennedy, J., concurring) ("Minnesota may *choose* to have an elected judiciary." (emphasis added)). Indeed, many states have chosen not to elect their judges; in at least 20 states, initial selection of judges is by some form of merit selection or appointment, rather than election. *See* American Judicature Society, *Judicial Selection in the States— Appellate and General Jurisdiction Courts,* "Summary of Initial Selection Methods" (2010), http://www.judicial selection.us/uploads/documents/Summary_ Initial_Selction_1196092501390.pdf.

The *Republican Party* decision does not hold that the First Amendment requires a state to elect its judges, or to elect them at particular intervals. Rather, the case holds that if the state chooses to elect its judges, the elections provided for by state law must comply with First Amendment protections. *Republican Party*, 536 U.S. at 788, 122 S.Ct. 2528. Absent a requirement of state law to hold an election, there simply can be no violation of the First Amendment right to vote or to run for office.

Therefore, because state law does not require an election for the chief justice seat in November 2010, the failure to put the chief justice seat on the November 2010 ballot does not violate the First Amendment, either with respect to petitioners' rights to vote or the rights of petitioners Clark and Wersal to run for public office.

Petition denied.

MAGNUSON, C.J., ANDERSON, G. BARRY, J., GILDEA, J., and DIETZEN, J., took no part in the consideration or decision of this case.

LANSING and STONEBURNER, Acting Justices.*

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subd. 2 (2008).