# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2397

_____

| | |
|---|---|
| Heather Robins; Jill Eleanor Clark; Gregory Wersal, | * <br> * <br> * |
| Plaintiffs – Appellants, | * <br> * |
| v. | *   Appeal from the United States <br> *   District Court for the <br> *   District of Minnesota. |
| Mark Ritchie, in his official capacity as Minnesota Secretary of State (and/or his successor); Timothy Pawlenty, in his official capacity as Governor of the State of Minnesota (and/or his successor); John Does 1-300, | * <br> * <br> * <br> * <br> * <br> * <br> * |
| Defendants – Appellees. | * |

_____

Submitted: September 20, 2010
Filed: January 26, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Heather Robins, Jill Clark, and Gregory Wersal (hereinafter "Robins") filed a complaint in federal district court challenging the constitutionality of Minnesota Constitution Article VI, Section 8, and Minnesota Statutes §§ 204B.36, subdivision 5 (incumbency designation for judges), and 490.125 (mandatory retirement age for judges). Robins sought a preliminary injunction to enjoin Minnesota's Secretary of

State from relying on the challenged state laws and requiring him to hold an election for the seat of Chief Justice of the Minnesota Supreme Court in November of 2010. The district court[1] denied the motion and Robins appealed. Without reaching the district court's denial of the preliminary injunction, we remand to the district court to dismiss Robins's challenges to Article VI, Section 8 of the Minnesota Constitution and to the incumbency designation statute, Minnesota Statutes § 204B.36, subdivision 5, for lack of subject matter jurisdiction. We also remand Robins's challenge to the statutorily mandated retirement age for judges to be dismissed, with Judge Beam's separate opinion announcing the judgment of the court on that issue.

I

Robins brought suit in the United States District Court for the District of Minnesota against Minnesota Governor Timothy Pawlenty, who appoints a new Chief Justice in the event of a vacancy, and Minnesota Secretary of State Mark Ritchie, who posts vacant seats for which candidates may file to run and prepares sample ballots. Robins is a resident and eligible voter of Minnesota. Wersal and Clark are each residents of Minnesota who intended to file for candidacy for the seat of Chief Justice of the Minnesota Supreme Court in the November 2010 election.

In their complaint, Heather Robins, Jill Clark, and Gregory Wersal alleged a misuse of resignations and appointments to delay and prevent elections in violation of the Minnesota Constitution's preference for elections and the United States Constitution's right to vote and run for public office. The claims are based on the recent resignation of Chief Justice Eric J. Magnuson and the subsequent appointment of Associate Justice Lorie Skjerven Gildea as the new chief justice. According to the complaint, there has not been an election for the seat of chief justice for ten years.

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

Chief Justice Kathleen A. Blatz was elected in 2000 to a six-year term and was to run for re-election in 2006. However, in 2005, Chief Justice Blatz announced her resignation from the Minnesota Supreme Court, effective in January 2006. Governor Pawlenty appointed Associate Justice Russell A. Anderson to the chief justice seat. Chief Justice Anderson was to run for re-election in 2008, but resigned before the election. Governor Pawlenty then appointed Eric J. Magnuson as the new chief justice. Chief Justice Magnuson was to run for election in November 2010, but in March 2010 Chief Justice Magnuson announced his resignation effective at the end of June 2010. Governor Pawlenty then appointed Associate Justice Lorie Skjerven Gildea as chief justice.

Robins alleges this series of resignations and appointments is "more than coincidence, and that the Governor has engaged in a systemic overuse of the appointment process . . . to appoint his friends and colleagues . . . at the expense of the public's right to vote for Chief Justice."

Two relevant challenges to the resignation and appointment process were previously brought to the Minnesota Supreme Court. First, Robins and Clark brought a petition in 2008 challenging the incumbency designation provided for in Minnesota Statutes § 204B.36, subdivision 5. In Clark v. Pawlenty ("Clark I"), the Minnesota Supreme Court denied the petition in its entirety, holding in part, "petitioners have not established any violation of their First Amendment rights" as to the incumbency designation. 755 N.W.2d 293, 314 (Minn. 2008). Robins and Clark petitioned for a writ of certiorari, which was denied by the United States Supreme Court. Clark v. Pawlenty, 129 S.Ct. 2056 (2009).

Then, on March 16, 2010, Robins, Clark, and Wersal filed a petition in the Minnesota Supreme Court naming Governor Pawlenty and Secretary of State Ritchie as respondents. In Clark v. Ritchie ("Clark II"), the petitioners sought to bar Governor Pawlenty from appointing anyone to fill the vacancy resulting from Chief

Justice Magnuson's resignation and to require Secretary of State Ritchie to open the chief justice seat for election in November of 2010. 787 N.W.2d 142, 144-45 (Minn. 2010). The petitioners asserted there was an excessive use of the appointment process for filling judicial vacancies and claimed the Minnesota Constitution required an election for chief justice in 2010. Id. at 146. The petitioners further asserted Secretary of State Ritchie's failure to accept candidate filings or hold an election for the seat of chief justice violated their rights under the First Amendment of the United States Constitution to run for office and to vote. Id. at 151.

On May 13, 2010, the Minnesota Supreme Court issued an opinion denying the petition. The court declared Minnesota law has no preference or requirement for judges to be elected, noting "'[n]either election nor appointment of judges is preferred over the other—under the constitution each process has its place under different circumstances.'" Id. at 146-47 (quoting Zettler v. Ventura, 649 N.W.2d 846, 850 (Minn. 2002)). The court explained "the Governor is obligated to fill by *appointment* all judicial vacancies" under the plain language of Article VI, Section 8 of the Minnesota Constitution and therefore held the resignation of Chief Justice Magnuson created a vacancy that Governor Pawlenty was obligated to fill by appointment until the "election of a successor at the next general election more than one year after his or her appointment, that is, in November 2012." Clark II, 787 N.W.2d at 147, 151 (emphasis added). The court concluded "the Secretary of State is not authorized under state law to post the chief justice seat for the November 2010 general election," and the Secretary of State's refusal to hold an election for chief justice in 2010 "does not violate the First Amendment, either with respect to petitioners' rights to vote or the rights of petitioners Clark and Wersal to run for public office" because state law "does not permit an election for chief justice in November 2010." Id. at 151.

On May 17, 2010, following the Minnesota Supreme Court's decision in Clark II, Robins filed a one-count complaint in federal district court. The complaint asserted a violation of 42 U.S.C. § 1983 arguing Minnesota Constitution Article VI, Section

8, Minnesota Statutes § 204B.36, subdivision 5 (incumbency designation), Minnesota Statutes § 490.125 (mandatory retirement age), and the overcreation of judicial vacancies coupled with the overuse of appointments violate the First Amendment right to vote and to run for public office, the right to equal protection in voting, and the Fourteenth Amendment right to vote.

On May 21, 2010, Robins sought a preliminary injunction based on two issues from the complaint: (1) the constitutionality of Article VI, Section 8, of the Minnesota Constitution, and (2) the constitutionality of the incumbency designation statute, Minnesota Statutes § 204B.36, subdivision 5. Robins asked the district court to issue a preliminary injunction restraining Secretary of State Ritchie from enforcing Minnesota Constitution Article VI, Section 8, as interpreted by the Minnesota Supreme Court and thereby requiring him to open the chief justice seat for candidacy filing and voting, or, in the alternative, asked for a writ of mandamus requiring the Secretary of State to open filing for the chief justice seat. And, if the injunction was granted on that first issue, Robins sought to enjoin Secretary of State Ritchie from using the incumbency designation. Robins also asked the district court to enjoin Governor Pawlenty from making any future appointments under Article VI, Section 8.

The district court denied the motion for a preliminary injunction concluding the claims would not likely prevail on the merits because they are most likely barred by res judicata and because they hinge on an election being required under state law, which the Minnesota Supreme Court expressly rejected in Clark II. The district court also recognized it may lack jurisdiction in this case under the Rooker-Feldman doctrine but declined to reach that issue until it held a hearing on the State's motion to dismiss.[2] Robins now appeals.

---

[2]The district court declined to address jurisdiction under Rooker-Feldman when ruling on the motion for a preliminary injunction because it found the other two bases were sufficient to resolve the motion and because there was a pending hearing on the matter of jurisdiction. By order of this court, the district court's consideration of

II

As a court of limited jurisdiction, before we reach the merits of any case, we must determine whether we have jurisdiction. "[E]very federal appellate court has a special obligation to consider its own jurisdiction." Schatz Family v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003) (internal quotation marks and citation omitted). A federal appellate court can raise jurisdiction issues sua sponte when there is an indication jurisdiction is lacking. Thomas v. Basham, 931 F.2d 521, 522-23 (8th Cir. 1991). "Lack of jurisdiction of the subject matter of litigation cannot be waived by the parties or ignored by the court." Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 27 (8th Cir. 1964). "The appellate court must satisfy itself not only of its own jurisdiction but also of that of the district court." Id. The case should be dismissed if subject matter jurisdiction is lacking. Hunter v. Underwood, 362 F.3d 468, 476-77 (8th Cir. 2004).

The State raised the question of jurisdiction under the Rooker-Feldman doctrine to the district court as well as to this court. "The basic theory of the Rooker-Feldman doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 754 (8th Cir. 2010) (internal quotation marks and citation omitted); see also 28 U.S.C. § 1257(a); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 486 (1983). The United States Supreme Court confined the Rooker-Feldman doctrine to only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi

_____

jurisdiction under the Rooker-Feldman doctrine was stayed pending resolution of this appeal.

-6-

Basic Indus., 544 U.S. 280, 284 (2005). This court has specifically cautioned against state-court losers seeking victory over their adversaries in subsequent § 1983 actions in federal court. We noted, "[l]itigants can choose whether to pursue . . . claims in state or federal court," Dodson, 601 F.3d at 754 (citing Charchenko v. City of Stillwater, 47 F.3d 981, 984 (8th Cir. 1995)), and "[o]nce a party has litigated in state court, however, he 'cannot circumvent Rooker-Feldman by recasting his or her lawsuit as a [section] 1983 action,'" id. at 754-55 (quoting Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997) (second alteration in original)). Because Robins's challenges to Article VI, Section 8 of the Minnesota Constitution and the incumbency designation statute are essentially appeals from state-court judgments masked as a § 1983 action, brought by state-court losers, and filed after the state court rendered its judgments, we conclude the district court lacks subject matter jurisdiction over those claims and thus those claims should be dismissed.

A

First, this case is essentially an appeal from a state-court judgment by an aggrieved party. One way to determine whether a federal claim is based on a complaint of injury caused by a state-court judgment, and thus an appeal of such judgment, is to determine if the state and federal claims are "inextricably intertwined." Feldman, 460 U.S. at 482 n.16; Charchenko, 47 F.3d at 983. Federal claims are inextricably intertwined with state-court claims if the federal claims can succeed only to the extent the state court wrongly decided the issues before it. Charchenko, 47 F.3d at 983 (citing Kenne Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990)). As explained in Feldman, district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege the state court's action was unconstitutional. Review of those decisions may be had only in [the Supreme] Court." 460 U.S. at 486.

We find Robins's current challenges to both the Minnesota Constitution and the incumbency designation statute to be inextricably intertwined with claims raised in Clark I and Clark II. Robins's challenge to Article VI, Section 8 of the Minnesota Constitution and the alleged systematic overuse of vacancies and appointments to avoid elections hinge on whether state law mandates the election of judges and, in particular, the election of the chief judge in the November 2010 general election. See, e.g., Bonas v. Town of N. Smithfield, 265 F.3d 69, 75 (1st Cir. 2001) (concluding widespread disenfranchisement occurs only if the town refused to hold an election that was required by state and local rules because whether one is deprived of the right to vote in a state election "starts–and ends–with a question of state law"); Duncan v. Poythress, 657 F.2d 691, 703 (5th Cir. 1981) (holding a violation of the Fourteenth Amendment exists if state officials refuse to hold an election for a vacant supreme court justice seat when the election is required by state law) cited by Nolles v. State Comm. for Reorg. of Sch. Dist., 524 F.3d 892, 898 (8th Cir. 2008). But, the Minnesota Supreme Court has already ruled no such election is required. See Clark II, 787 N.W.2d at 151. Robins's claims challenging Article VI, Section 8 can, therefore, only succeed if the district court concludes an election for chief justice is required under Minnesota law, a conclusion which would require the district court to overturn the Minnesota Supreme Court's decision in Clark II.

Equally so, Robins's challenge to the incumbency designation provided for in Minnesota Statutes § 204B.36, subdivision 5 was raised and expressly rejected in Clark I. Robins cannot succeed on the claim without the district court overruling that decision.

Robins alleges the claims are not inextricably intertwined because she is merely challenging the constitutionality of the Minnesota Constitution as interpreted by the Minnesota Supreme Court, and not asking the district court to necessarily reject the Minnesota Supreme Court's ruling regarding the requirement of judicial elections and in particular an election for chief justice in 2010. We find this argument unpersuasive.

According to the Supreme Court in Feldman, district courts have no authority to review state court decisions, "even if those challenges allege that the state court's action was unconstitutional," 460 U.S. at 486. Therefore, the claims involved here, even if only a challenge to the constitutionality of the state-court's decision, are an attempt to appeal the Minnesota Supreme Court's decisions in Clark I and Clark II to a federal district court.

B

Second, this case was initiated after judgment was rendered in the state-court proceeding and thus meets the timing requirement as described in Exxon Mobil, 544 U.S. at 284. In that case the Supreme Court confined the Rooker-Feldman doctrine to federal cases brought by state-court losers challenging "state-court judgments rendered *before* the district court proceedings commenced." Id. (emphasis added). There is no dispute between the parties that the judgment in Clark I was rendered before the present case was filed in district court. But, the parties disagree on the date the judgment was rendered in Clark II.

The opinion in Clark II was filed on May 13, 2010, and the clerk of the appellate courts entered judgment on June 8, 2010. Robins filed the federal complaint on May 17, 2010, and served the complaint on the defendants on May 21, 2010. The parties dispute whether May 13 or June 8 is the date the state court "rendered" judgment for purposes of Rooker-Feldman.

Neither the Supreme Court nor this circuit has clarified when, for Rooker-Feldman purposes, a state court renders judgment—the issuing of the opinion or the formal entry of judgment. Other circuits have briefly addressed this issue and held the state-court proceedings end for the purposes of Rooker-Feldman when the state court "finally resolve[s]" the claims at issue. Mothershed v. Justices of the Sup. Ct., 410 F.3d 602, 604 n.1 (9th Cir. 2005) (concluding the state-court proceedings ended for

Rooker-Feldman purposes when state supreme court denied the writ of mandumus and "finally resolved" the issue plaintiff sought to relitigate in federal court); Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 25 (1st Cir. 2005) (holding "if the state court proceedings have finally resolved all the federal questions in the litigation, . . . then the state proceedings have 'ended' within the meaning of Rooker-Feldman on the federal questions at issue"). A district court case from the District of Minnesota, Christ's Household of Faith v. Ramsey County, ("CHOF"), also addressed this timing issue and came to a similar conclusion as the First and Ninth Circuits:

> [A] "judgment" refers to "[a] court's final determination of the rights and obligations of the parties in a case." Black's Law Dictionary (8th ed. 2004). In the context of a judgment at law, "final" means "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated." Id. The state district court issued its final determination of the rights of the parties on September 29, 2008. In other words, it rendered judgment on that date. Furthermore, CHOF's argument that the state court did not "render" its judgment because it granted CHOF's request for a thirty day stay would create an incentive for state court losers to repeat this tactic. As soon as they learn of an unfavorable result in state court, state court losers could request a stay and then rush to file in federal court.

618 F. Supp. 2d 1040, 1045 (D. Minn. 2009) (alterations in original).

The purpose behind the timing requirement of Rooker-Feldman as refined in Exxon Mobil supports the conclusion reached by the First and Ninth Circuits and the District Court for the District of Minnesota. The Rooker-Feldman doctrine preserves the United States Supreme Court's exclusive jurisdiction to reverse or modify state-court judgments under 28 U.S.C. § 1257. See Dodson, 601 F.3d at 754. Both Rooker and Feldman involved a party, who lost in state court, filing suit in federal court to complain of an injury caused by the state-court judgment and seeking review and rejection of that judgment. 263 U.S. at 415-16; 460 U.S. at 476. When the Supreme

Court decided <u>Exxon Mobil</u>, it recognized the holdings of <u>Rooker</u> and <u>Feldman</u> were applied too broadly. 544 U.S. at 283. The lower court in <u>Exxon Mobil</u> dismissed a federal case which had been filed while the state court proceeding was still pending, because the state court rendered its judgment before the federal case was resolved. <u>Id.</u> at 290. On appeal, the Supreme Court clarified <u>Rooker-Feldman</u> does not bar concurrent proceedings in both state and federal court, even if the state court renders judgment before the federal suit is resolved, so long as the federal case is not an appeal of the state case. <u>Id.</u> at 292. To distinguish between cases falling within the Supreme Court's exclusive appellate jurisdiction and cases involving this concurrent jurisdiction, the Supreme Court prescribed a timing requirement; it confined the application of <u>Rooker-Feldman</u> to only those federal cases commenced after a state-court judgment was rendered.

Given the intent behind the timing requirement, the date a judgment is "rendered" for <u>Rooker-Feldman</u> purposes should be the date the state court "finally resolved" the claims. To use the formal judgment date would create a window of time between the state court's final decision and the administrative entry of judgment in which an aggrieved party could thwart the Supreme Court's exclusive jurisdiction by filing suit in federal district court appealing a state-court decision. In the context of Minnesota's highest court, to rely solely on the date the judgment is formally entered by the clerk of the appellate courts would create an automatic 30-day window in which a losing party could file a complaint in federal court and appeal state-court decisions under the guise of concurrent jurisdiction. <u>See</u> Minn. R. Civ. App. Proc. 136.02 ("the clerk of the appellate courts shall enter judgment pursuant to the decision or order not less than 30 days after the filing of the decision or order"). This would undermine the purpose of the <u>Rooker-Feldman</u> doctrine.

The facts of the current case demonstrate how the purpose of <u>Rooker-Feldman</u>—the preservation of the United States Supreme Court's exclusive appellate jurisdiction to reverse or modify state-court judgments—would be undermined if the

state-court judgment was "rendered" for <u>Rooker-Feldman</u> purposes only when the formal judgment was entered instead of the date the state court's final decision was issued. The Minnesota Supreme Court issued its final decision in <u>Clark II</u> when it filed its opinion on May 13, 2010. Formal judgment was not entered until June 8, 2010, in accordance with Minnesota Rule of Civil Appellate Procedure 136.02. Robins initiated the federal suit to appeal the Minnesota Supreme Court's opinion in <u>Clark II</u> on May 17, which was after the opinion was released but before judgment was entered. To use the date of the entry of formal judgment would allow state-court losers to learn of the outcome of the state-court matter and challenge such outcome in a lower federal court under the guise of concurrent jurisdiction. This would undermine the Supreme Court's jurisdiction and the holdings of both <u>Rooker</u> and <u>Feldman</u>.

Therefore, we hold that for the purposes of <u>Rooker-Feldman</u> a state court renders judgment on the date the state court "finally resolves" the claims before it, which for this case is May 13, 2010, when the Minnesota Supreme Court filed its opinion. Because the federal claim was filed after that date, the present case satisfies the <u>Rooker-Feldman</u> timing requirement as set forth in <u>Exxon Mobil</u>.

The requirements of <u>Rooker-Feldman</u> are met because the plaintiffs in this case are a "losing party in state court [who] filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." <u>Exxon Mobil</u>, 544 U.S. at 291. Therefore, the district court lacks subject matter jurisdiction over Robins's challenges to the Minnesota Constitution Article VI, Section 8—including challenges to the systematic overuse of the vacancy and appointment process—and the incumbency designation statute, Minn. Stat. § 204B.36, subd. 5. We therefore remand this case to the district court to dismiss the claims based on those challenges for lack of subject matter jurisdiction.

-12-

# III

Robins also challenges the constitutionality of Minnesota Statutes § 490.125, which creates a mandatory retirement age for judges. I concur in the result reached by the court as announced in Judge Beam's separate opinion, but disagree with dismissing the case based on a lack of standing. Because I do not believe Robins challenges Minnesota Statute § 490.125 on the basis of equal protection or under the Age Discrimination in Employment Act, and because I instead believe the challenge is premised on the statute's alleged interference with the voters' right to elect its judiciary, I would conclude Robins does have standing. However, Robins's challenge is focused on the constitutionality of the judicial appointments resulting from midterm vacancies created by the mandatory retirement of judges. Even though it appears different in form, the substance of the challenge is the same as the claims raised in Clark II—whether the Governor's ability to appoint a judge in the event of a vacancy, as provided for in Article IV, Section 8 of the Minnesota Constitution, infringes on the constitutional rights to vote and run for public office. Because I find this claim to be substantively the same claim raised in Clark II, I would conclude the district court is without subject matter jurisdiction to consider this challenge under Rooker-Feldman.

I recognize Robins did not expressly challenge the statutorily mandated retirement age for judges in either Clark I or Clark II. However, I would conclude the underlying premise of Robins's challenge was raised and rejected in both Clark I and Clark II, and therefore is inextricably intertwined with the state-court claims. Robins's challenge to the mandatory retirement age is limited in scope; it is a challenge only to the effect the statute has in creating a possible midterm vacancy, resulting in an appointment and possible delay of the next judicial election for that seat. According to the complaint, Robins claims:

> [the] constitutional right to vote, and/or to run for office, and other First Amendment rights are violated by . . . the mandatory retirement statute at Minn. Stat. § 490.125, which is unconstitutional on its face, but also as applied, because the statute creates numerous mid-term (not at the end of 6 years) vacancies, which then allow[s] the Governor to appoint.

Complaint for Declaratory Judgment & Injunction ¶ 17. In short, Robins's challenge to this statute is based on it being an impetus for judicial appointments, which, according to Robins, infringes on the right to vote and run for public office.

I would conclude this claim is essentially the same as Robins's challenge to Article VI, Section 8 of the Minnesota Constitution. Robins's challenge, as I read it, is not to whether the mandatory retirement age violates a judge's constitutional rights, but rather whether the vacancies created by the mandatory retirement age thwarts constitutionally protected judicial elections through a subsequent appointment under Article VI, Section 8. This claim can only succeed if the Governor's ability to appoint in the event of a vacancy under Article VI, Section 8 were unconstitutional. And, as discussed in Part II.A., for Article VI, Section 8 to be declared unconstitutional, the district court would first have to find state law requires judicial elections and disfavors the use of appointments. Such a finding, though, would require a reversal of Clark II, including the Minnesota Supreme Court's express rejection of "the argument that the constitution establishes such a preference" for elections and holding that "'[N]either election nor appointment of judges is preferred over the other.'" Clark II, 787 N.W.2d at 146-47 (quoting Zettler, 649 N.W.2d at 850) (alteration in original). Thus, I would hold Robins's challenge to the mandatory retirement age, like Robins's other claims, is inextricably intertwined with the state court's decisions and should be dismissed for lack of subject matter jurisdiction under Rooker-Feldman.

I therefore concur with the result reached by the court as announced in Judge Beam's separate opinion, but for different reasons, and would remand this claim, along with Robins's other claims, to the district court to be dismissed.

BEAM, Circuit Judge, with whom Judge SMITH joins, concurring in part, dissenting in part, concurring in the result, and announcing the judgment of the court in part.

I concur in the court's conclusion that this court has no subject matter jurisdiction under the Rooker-Feldman doctrine for claims challenging the constitutionality of Minnesota Constitution Article VI, Section 8 and Minnesota Statute § 204B.36, subdivision 5 (incumbency designation). I dissent from application of the Rooker-Feldman doctrine to the Minnesota Statute § 490.125 (mandating retirement age for judges) claim. But, because under established precedent the retirement-age claim is otherwise unreviewable or without merit, I would dismiss it sua sponte using reasoning inherent within Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).

After filing the district court complaint, the plaintiffs' sought a preliminary injunction under Federal Rule of Civil Procedure 65(a) based upon its Article VI, Section 8 and § 204B.36 allegations. The district court ruling was limited to these two demands. And, this interlocutory appeal, see 28 U.S.C. § 1292, advances only the district court's refusal to issue a preliminary injunction based exclusively upon these two averments. The district court refused to rule on defendants' subject matter jurisdiction defense which asserted Rooker-Feldman principles.

There is no indication that the mandatory retirement of judges issue, with its attendant Fourteenth Amendment (equal protection) and Age Discrimination in Employment Act (ADEA) allegations, was ever raised in Clark I or Clark II or discussed in the district court. Neither is there any indication that any judge, judicial candidate or voter involved in this dispute was ever in any way directly affected by Minnesota Statute § 490.125.

In fact, defendants, in their memorandum of law in support of their motion to dismiss, concede that the § 490.125 "issue was not raised in Clark I or Clark II."

Thus, under the limiting gloss now placed upon <u>Rooker-Feldman</u> by the Supreme Court, <u>see</u> <u>Exxon Mobile Corp. v. Saudi Basic Industries</u>, 544 U.S. 280, 284 (2005), it is difficult, if not impossible, to see any connection whatever between <u>Rooker-Feldman</u>, <u>Clark I</u> and <u>Clark II</u> and the judicial retirement statute advanced by plaintiffs. Accordingly, the doctrine cannot be used to separate this claim from the subject matter jurisdiction of either the district court or this court.

Upon being directly addressed by the court, however, the retirement claim is easily disposed of. A federal court has jurisdiction to consider its own subject matter jurisdiction. <u>Moussa v. INS</u>, 302 F.3d 823, 825 (8th Cir. 2002). Thus, properly analyzed in this context, one can see that the absence of a directly interested party eliminates the standing necessary to advance the retirement age dispute given the case-or-controversy requirement of Article III, Section 2 of the United States Constitution. Such standing determination is, however, wholly unrelated to the <u>Rooker-Feldman</u> doctrine. Likewise, even assuming jurisdiction, the ADEA and the equal protection allegations fail to state a claim under <u>Gregory v. Ashcroft</u>, 501 U.S. 452 (1991); and the retiree-appointment dispute is defeated by <u>Nelson v. Quie</u>, 299 N.W.2d 119 (Minn. 1980).

Accordingly, I concur in the result reached by the court subject to the limitations set forth above.

_____